## DUNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
## BOSTON DIVISION

| | |
|---|---|
| **ROBERT MARINO, on behalf of himself and all others similarly situated,** | |
| **Plaintiff,** | **Case No. _____** |
| **v.** | |
| **FORD MOTOR COMPANY,** | **CLASS ACTION COMPLAINT** |
| | **Demand for Jury Trial** |
| **Defendant.** | |

Plaintiff Robert Marino ("Plaintiff"), by and through counsel, brings this Class Action Complaint against Defendant Ford Motor Company ("Defendant" or "Ford"), on behalf of himself and all others similarly situated, and alleges, upon personal knowledge as to his own actions and his counsel's investigations, and upon information and belief as to all other matters as follows:

### NATURE OF THE CASE

1.      Plaintiff brings this case individually and on behalf of all similarly situated persons ("Class Members") who purchased or leased Model Year 2017-2020 Ford F-150 vehicles ("Class Vehicles" or "Vehicles") that were designed, manufactured, distributed, marketed, sold or leased by Defendant or Defendant's parent, subsidiary, or affiliates thereof.

2.      Defendant designed, manufactured, distributed, marketed, sold, and leased Model Year 2017-2020 Ford F-150 vehicles equipped with the 10R80, a 10-speed automatic transmission ("Transmission") designed and manufactured by Ford.

3.      Defendant knew or should have known that the Vehicles contain one or more design and/or manufacturing defects, including but not limited to defects contained in the Vehicles' 10R80, a ten-speed automatic transmission that can shift harshly and erratically, causing the vehicle to jerk, lunge, and hesitate between gears.

4.      An automatic transmission is essentially an automatic gear shifter. Instead of manually shifting the gears with a clutch, the automatic transmission does it on its own. The transmission acts as a powertrain to convert the vehicle engine's force into a controlled source of power. Accordingly, drivers need a properly functioning automatic transmission in order to safely and reliably accelerate and decelerate their Vehicles.

5.      A common design and/or manufacturing defect in Ford's 10R80 transmissions is a potentially life-threatening safety issue and Ford has refused to recall or replace the defective Transmissions.

6.      Ford's warranty states that "dealers will, without charge, repair, replace, or adjust all parts on your vehicle that malfunction or fail during normal use during the applicable coverage period due to a manufacturing defect in factory-supplied materials or factory workmanship."[1]

7.      Upon information and belief, Ford refuses to replace or repair the Transmissions and merely states that the abrupt and harsh shifting is normal.

8.      Prior to purchasing or leasing the Vehicles, Plaintiff and other Class Members did not know that the Vehicles would abruptly and harshly shift due to the Transmission Defect and cause their vehicles to unexpectedly surge, hesitate, and jerk.

---

[1]Source:    http://www.fordservicecontent.com/Ford_Content/Catalog/owner_information/2018-Ford-Car-Lt-Truck-version-5_frdwa_EN-US_01_2018_3.pdf (last viewed January 2, 2020).

9.      Upon information and belief, Plaintiff alleges that Defendant knew or should have known that the Vehicles are defective and suffer from the Transmission Defect and are not fit for their intended purpose of providing consumers with safe and reliable transportation. Nevertheless, Defendant failed to disclose this defect to Plaintiff and Class Members at the time of purchase or lease and thereafter.

10.     Had Plaintiff and Class Members known about the Transmission Defect at the time of sale or lease, as well as the associated costs related to the Transmission Defect, Plaintiff and the Class Members would not have purchased or leased the Class Vehicles or would have paid less for them.

11.     As a result of their reliance on Defendant's omissions and/or misrepresentations, owners and/or lessees of the Class Vehicles have suffered ascertainable loss of money, property, and/or loss in value of their Class Vehicle.

12.     The first priority of an auto manufacturer should be to ensure that its vehicles are safe and operate as intended to prevent or minimize the threat of death or serious bodily harm. In addition, an auto manufacturer must take all reasonable steps to ensure that, once a vehicle is running, it operates safely, and its mechanical systems (such as the transmission) work properly. Moreover, an auto manufacturer that is aware of dangerous design defects that cause its vehicles to jerk, hesitate, surge, or slip gears must promptly disclose and remedy such defects.

13.     This case arises from Defendant's breach of its obligations and duties, including Defendant's omissions and failure to disclose that, as a result of the Transmission Defect, the Vehicles may shift harshly, slip gears, hesitate, or surge, creating an unreasonable risk of serious bodily harm and death.

14.     To the extent warranted by the developing facts, Plaintiff will further supplement the list of Class Vehicles to include additional Ford vehicles that have the Transmission Defect.

15.     The Transmission Defect makes the Class Vehicles unreasonably dangerous. Because of the Defect, the Class Vehicles stall unexpectedly, fail to accelerate when necessary, and are likely to catch fire if accidents occur. There is an unreasonable and extreme risk of serious bodily harm or death to the Vehicle's occupants and others in the vicinity if involved in a collision caused by the Transmission Defect.

## PARTIES

16.     Plaintiff Robert Marino is a Massachusetts citizen who lives in Essex County, Massachusetts. Mr. Marino leased a 2019 Ford F-150 Sport. This vehicle was designed, manufactured, sold or leased, distributed, advertised, marketed, and/or warranted by Ford Motor Company.

17.     Defendant Ford Motor Company is a publicly traded corporation organized under the laws of the State of Delaware with The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801 as its registered agent. Ford's principle place of business is at One American Road, Dearborn, Michigan 48126.

18.     Ford, through its various entities, designs, manufactures, markets, distributes, and sells its vehicles in this District and many other locations in the United States and worldwide. Ford and/or its agents designed, manufactured, and installed the Ford transmissions in the Class Vehicles.   Ford also developed and disseminated the owner's manuals, warranty booklets, advertisements, and other promotional materials pertaining to Class Vehicles.

## JURISDICTION AND VENUE

19.     The Court has subject matter jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  There are at least 100 members in the proposed class, the aggregated claims of the individual Class Members exceed the sum or value of $5,000,000.00 exclusive of interest and costs, and Plaintiff and Class Members are citizens of states different from Defendant.

20.     The Court has personal jurisdiction over Ford because, through its business of distributing, selling, and leasing the Vehicles in this District, Ford has established sufficient contacts in this District such that personal jurisdiction is appropriate.

21.     Venue is proper in this District under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Specifically, Plaintiff Marino's Vehicle was purchased in this District.

## THE NATURE OF THE TRANSMISSION DEFECT

22.     For many years, Ford has designed, manufactured, advertised, sold, and leased its popular Ford F-Series pickup trucks, which has been the best-selling pickup in the United States for the last 42 years.[2]

23.     On its website, Ford touts the F-150's superiority among its competitors:

# CLASS-LEADING CAPABILITY

The Ford F-150 makes tough tasks look easy, whether it's working on the job or heading out on a weekend of recreation. F-150 outperforms every other truck in its class when hauling cargo in the bed or towing a trailer.* No wonder the competition is always in a scramble to follow the leader.

---

[2]Source: https://www.msn.com/en-us/autos/news/ford-f-series-is-americas-best-selling-truck-for-42nd-straight-year/ar-BBRLwMm (last viewed January 2, 2020).

**5 –CLASS ACTION COMPLAINT**

24.     In terms of power, Ford states the F-150's 3.5L Ecoboost engine with the 10R80

10-speed transmission provides "on-demand power with virtually no lag"[3]:

# 3.5L ECOBOOST®

The 3.5L EcoBoost® with 10-speed transmission boasts impressive power ratings of 375
horsepower and best-in-class* 470 lb.-ft. of torque, beating out all gas and diesel competitors.
This engine delivers the F-150 best-in-class* tow rating too. Features include the Ford port-
fuel and direct-injection (PFDI) system with two injectors per cylinder — one in the air intake
port, another inside the cylinder — to increase performance. Plus twin intercooled turbos for
on-demand power with virtually no lag.

*When properly configured. Class is Full-Size Pickups under 8,500 lbs. GVWR based on Ford segmentation.

25. Ford makes additional warranties regarding its 10-speed automatic transmission as shown

below[4]:

# 10-SPEED AUTOMATIC TRANSMISSION

F-150 EcoBoost®, V8 and diesel engines deliver their power through an advanced 10-speed
automatic transmission. Compared with the 6-speed, the 10-speed delivers improved overall
performance, with enhanced acceleration at the low and mid ranges of the power band.
Features include optimized wide-span gear spacing coupled with drag-reduction actions plus
three overdrive gears. What's more, you can choose from selectable modes: Normal, Tow-
Haul, Snow-Wet, EcoSelect, and Sport.



[3]Source: https://www.ford.com/trucks/f150/?hptid=fv-2598-hp-
va%3Abillboard%3Aslide0%3Ana%3Aford%20f-150&gnav=header-all-vehicles (last viewed
January 2, 2020).
[4] Source: https://www.ford.com/trucks/f150/features/power/#engines_tab (last viewed January 2,
2020); 2019 Ford F-150 Brochure.



CLASS-BEST
**510 LB-FT.** TORQUE¹

CLASS-BEST
**450 HORSE POWER¹**

**450 HP OF FLAT-OUT LUXURY.** The unique satin finish on the grille, door handles, tailgate appliqué and dual exhaust tips of the 2019 F-150 LIMITED will certainly catch your eye. As will the massive 22" polished-aluminum wheels. What you'll appreciate most, however, is the immediate responsiveness of the High-Output 3.5L EcoBoost engine every time you press the accelerator. Catch one if you can.

## 10-SPEED TRANSMISSION

Standard with five F-150 engines for 2019, the innovative 10-speed automatic transmission with SelectShift® capability helps deliver higher average power for acceleration – improving responsiveness and performance. With optimized gear spacing, including 3 overdrive gears, the 10-speed gearbox helps maximize shift points and gear ratios to optimize power, low-rpm torque and fuel efficiency. For proof, see the Engines charts on the previous page.

10 speeds, plus progressive range select and tow/haul mode, enhance towing confidence. An electronic control system is engineered to help ensure the right gear at the right time, including skip-shift and direct downshift capability. Select the operating range for automatic shifting (in Drive) thanks to progressive range select. Combined with SelectShift operation in manual mode, the 10-speed delivers an exceptional level of driver control.

| 3.3L Ti-VCT V6 | 2.7L ECOBOOST | 5.0L Ti-VCT V8 |
|---|---|---|
| Equipped with the standard powerplant, F-150 supplies plenty of working power to tow and haul. That's a clean sweep in any truck buyer's ledger. "Even the base 3.3L V6 had zero trouble hauling a 5,000-pound trailer," says *Motor Trend*. | To understand an engine's specific output, divide its horsepower by its displacement. At a staggering 120 hp/L, you'll know why the 2.7L EcoBoost® is deemed "Pocket Hercules." It produces more torque (400 lb.-ft.) than the 5.3L V8 in the 2019 Chevrolet Silverado – an engine nearly twice its size. For exceptional driveability, the 2.7L¹ is paired with our 10-speed automatic transmission with SelectShift capability. "Drop the hammer, and the transmission instantly selects the ideal ratio for peak acceleration from your current speed, always landing in a sweet spot along the broad, flat torque curve and frequently delivering a sharp jolt of acceleration. Yeehaw!" says *Motor Trend*. Strength and durability come from compacted graphite iron (CGI) that forms the upper engine block and cylinders. | 32 valves. Twin independent variable cam timing. Dual-injection system. 12:1 compression ratio. They all combine to make the trusted 5.0L V8 engine¹ an exceptional choice for all-around F-150 capability. Plus, nothing else sounds quite like it. The V8 is paired with the 10-speed automatic transmission with SelectShift capability. |
| A dual-injection system features both direct injection and port fuel injection. Two injectors per cylinder – one mounted in the intake port and another inside the cylinder – improve power output and efficiency. A 6-speed automatic transmission with SelectShift® capability is paired with the 3.3L Ti-VCT V6 engine. | | An available, class-exclusive CNG/Propane Gaseous Engine Prep Package can ready your V8-equipped 2019 F-150 to be upfit for compressed natural gas (CNG), propane autogas, or as a bi-fuel vehicle with the ability to switch between CNG or propane and gasoline.² |
| 290 @ 6,500 rpm | 325 @ 5,000 rpm | 395 @ 5,750 rpm |
| 265 lb.-ft. @ 4,000 rpm | 400 lb.-ft. @ 2,750 rpm | 400 lb.-ft. @ 4,500 rpm |
| 1,990 lbs. | 2,470 lbs. | 3,270 lbs. |
| 7,700 lbs. | 9,000 lbs. | 11,500 lbs. |
| 19 mpg city/25 mpg hwy/22 mpg combined | 20 mpg city/26 mpg hwy/22 mpg combined | 17 mpg city/23 mpg hwy/19 mpg combined |
| 18 mpg city/23 mpg hwy/20 mpg combined | 19 mpg city/24 mpg hwy/21 mpg combined | 16 mpg city/22 mpg hwy/18 mpg combined |
| Naturally aspirated | Twin-turbocharged intercooled | Naturally aspirated |
| 6-speed SelectShift automatic | 10-speed SelectShift automatic | 10-speed SelectShift automatic |
| ○ XL, XLT | ○ XL, XLT, LARIAT | ○ XL, XLT, LARIAT, KING RANCH® PLATINUM |

| | 3.5L ECOBOOST | 3.5L H.O. ECOBOOST | 3.0L POWER STROKE V6 TURBO DIESEL |
|---|---|---|---|
| | The 3.5L EcoBoost® soldiers on for 2019 with a best-in-class 470 lb.-ft. of torque, along with 375 horsepower. Paired with the 10-speed automatic transmission with SelectShift capability, engine torque is readily available across the speed range for instant acceleration and exceptional low-end and peak performance. Exactly what's needed for hauling heavy loads and towing heavy trailers. A roller-finger follower valvetrain features durable intake and exhaust valves, as well as hydraulic valve-lash adjusters that optimize engine durability.<br><br>Robust 3.5L EcoBoost engines now power over 1,220,000 F-150 trucks. | Among the High-Output performance enhancements to the RAPTOR and LIMITED 3.5L EcoBoost engine: increased boost calibrations; a lighter turbine wheel made of high-temperature superalloy Mar-M-247 - developed by the aerospace industry - for improved responsiveness; cast stainless steel exhaust manifolds; full dual exhaust; oil-cooled pistons; and more aggressive engine control calibrations.<br><br>The close ratio between gears and the Ford patented direct-acting hydraulic control of the 10-speed automatic transmission with SelectShift capability really optimize the power and torque curves of this high-output EcoBoost powerhouse. | As the first-ever diesel engine in Ford F-150, the 3.0L Power Stroke V6 Turbo Diesel® features a best-in-class EPA-estimated rating of 30 mpg hwy;⁴ a best-in-class 440 lb.-ft. of diesel torque; and 250 diesel horsepower. Plus, best-in-class diesel payload and towing capacity.® It's paired with the 10-speed automatic transmission with SelectShift capability to put all that usable low-end engine torque to good use.<br><br>With the transmission's 10-speed architecture, and the engine's peak torque arriving at a low 1,750 rpm, this powertrain is an exceptional choice for those who tow and haul frequently – where strong torque delivery throughout the rpm range is exactly what you need. |
| Horsepower | 375@5,000 rpm | 450@5,000 rpm³ | 250@3,250 rpm |
| Torque | 470 lb.-ft. @3,500 rpm | 510 lb.-ft. @3,500 rpm³ | 440 lb.-ft. @1,750 rpm |
| Max. payload capacity² | 3,230 lbs. | 1,520 lbs. | 1,980 lbs. |
| Max. towing capacity⁵ | 13,200 lbs. | 11,100 lbs. | 11,300 lbs. |
| EPA-estimated ratings⁶ (4x2) | 18 mpg city/25 mpg hwy/21 mpg combined | 17 mpg city/22 mpg hwy/19 mpg combined | 22 mpg city/30 mpg hwy/25 mpg combined |
| (4x4) | 17 mpg city/23 mpg hwy/19 mpg combined | 17 mpg city/21 mpg hwy/19 mpg combined⁶ | 20 mpg city/25 mpg hwy/22 mpg combined |
| Induction system | Twin-turbocharged intercooled | Twin-turbocharged intercooled | Variable-geometry turbocharger, intercooled |
| Transmission | 10-speed SelectShift automatic | 10-speed SelectShift automatic | 10-speed SelectShift automatic |
| ● STANDARD<br>O AVAILABLE | O XL, XLT, LARIAT, KING RANCH, PLATINUM | ● LIMITED, RAPTOR | O XL (Fleet only), XLT, LARIAT, KING RANCH, PLATINUM |

26. In terms of express warranties, Ford offers a "New Vehicle Limited Warranty" for three years or 36,000 miles, whichever occurs first. [5]

27. Ford also offers extended warranty coverage for Powertrain components for five years or 60,000 miles, whichever occurs first. This extended warranty coverage includes the transmission and all internal parts, clutch cover, seals and gaskets, torque converter, transfer case (including all internal parts), transmission case, and transmission mounts.

28. Despite the popularity of Ford's F-150, the truck has not been without its problems. In February 2019, Ford issued three recalls, one of which covered select 2011 and 2013 Ford F-150 vehicles with six-speed automatic transmissions. In that recall, approximately 1.48 million F-150 trucks had a defect that can cause the truck to unexpectantly downshift into first gear causing accidents and injury to drivers.[6]

29. Plaintiff and Class Members allege a common transmission defect in their 2017-2020 model year Ford F-150's with a ten-speed transmission. As discussed herein, numerous F-

[5] Source: 2018 Model Year Ford Warranty Guide; http://www.fordservicecontent.com/Ford_Content/Catalog/owner_information/2018-Ford-Car-Lt-Truck-version-5_frdwa_EN-US_01_2018_3.pdf (last viewed January 2, 2020).
[6] Source: https://www.cnbc.com/2019/02/13/ford-issues-3-recalls-covering-nearly-1point5-million-vehicles.html (last viewed January 2, 2020).

150 drivers have experienced a loud "clunking" noise when starting the engine. One driver stated that the transmission "clunk" was so loud that he thought he had been hit by another car. Other drivers complain that their transmissions slip gears, jerk, and/or shift roughly. In one NHTSA complaint, a vehicle lost all power while accelerating through an intersection and the transmission failed to shift up or down. In another complaint, an F-150 would repeatedly stay stuck in the same gear, making the truck inoperable for several hours at a time.

30.    Due to the Transmission Defect, drivers have reported whiplash due to harsh shifting. Finally, many drivers have stated in NHTSA complaints that they do not feel safe driving their F-150s in normal traffic conditions.

31.    In response to customer complaints, Ford issued at least two Technical Service Bulletins ("TSBs") addressing the Transmission Defect. While the TSBs were meant to address harsh or bumpy transmission shifting, Ford advised that issues were normal and did not offer to repair or replace the Transmissions.

32.    Due to Ford's unwillingness to acknowledge the Transmission Defect and refusal to repair the Vehicles, Plaintiff and Class Members continue to drive defective and unsafe Vehicles.

## PLAINTIFF'S EXPERIENCE

33.    Mr. Marino was shopping for a safe and reliable vehicle to serve as his personal household vehicle.  While researching this vehicle, he read vehicle specification information and advertising on Ford's website about the Ford F-150, but saw no indication of the F-150's transmission problems. After completing his research, in March 2019, he leased a brand new 2019 Ford F-150 Sport pick-up truck from Quirk Ford in Quincy, Massachusetts (an authorized Ford dealership).  Mr. Marino's vehicle was equipped with the defective ten-speed transmission.  As

per the terms in the lease, Mr. Marino made a down payment of $3,000.00 and pays $530.00 per month.

34.    At the time of Mr. Marino's lease, Ford knew that its F-150 10R80, ten-speed automatic transmissions were defective but did not disclose the Defect to Mr. Marino.  Mr. Marino leased, then operated the vehicle, on the reasonable but incorrect belief that his Vehicle's transmission would operate properly as warranted.

35.    Approximately two months after leasing the Vehicle, Mr. Marino started to notice a loud "clunk" or "bang" noise upon starting the engine.  While driving his Vehicle, Mr. Marino also noticed the Vehicle slipping and jerking when changing gears.

36.    Neither Ford nor any of its agents, dealers, or representatives informed Mr. Marino of the Transmission Defect prior to his lease of the Vehicle.

37.    In late December 2019, Mr. Marino had to take his Vehicle back to the Ford dealership because he was unable to drive it due to the transmission problems. For the time the Vehicle was being serviced, he was forced to incur rental car expenses. The dealership updated the Vehicle's transmission software; however, after the update, he continues to have problems due to the Transmission Defect.

38.    Had Mr. Marino been advised of the Transmission Defect at or before the point of lease, he would not have leased his Vehicle or else would have paid significantly less for the Vehicle. Mr. Marino did not receive the benefit of his bargain. As a result, Mr. Marino has paid a premium for a defective vehicle which poses a safety hazard to himself, his family, and others.

39.    If Mr. Marino's F-150 transmission did not contain the Defect, he would likely lease or purchase another Ford F-150 in the future. Alternatively, if the Court were to issue an

injunction ordering Defendant to comply with advertising and warranty laws and fully address the safety issue, Mr. Marino would likely lease or purchase an F-150 again in the future.

## DEFENDANT KNEW OR SHOULD HAVE KNOWN OF THE TRANSMISSION DEFECT PRIOR TO PLAINTIFF'S PURCHASE

### A.    Ford's Knowledge and Refusal to Remedy the Transmission Defect

40.    Since the 10R80 transmission was introduced and equipped in the Class Vehicles, drivers have repeatedly complained about difficulty shifting and vehicle lunging and/or jerking to Ford.  During the class period there was an unusually large number of complaints of harsh and belabored transmission shifting such that Ford was put on notice of a specific problem.

41.    Namely, as the consumer complaints below indicate, Ford was aware, or should have been aware, that the Transmission Defect was present in the Class Vehicles dating back to at least March 2018, the date of the first TSB.

42.    Thus, by 2018, Ford knew or should have known through sufficient product testing, consumer complaints, or other methods, that the Class Vehicles contained the Transmission Defect.

43.    A complaint was also filed against Ford in the Northern District of Illinois on July 26, 2019 alleging the same Transmission Defect in Class Vehicles. *O'Connor v. Ford Motor Company*, No. 1:19-cv-05045 (N.D. Ill.).

44.    Upon information and belief, the Class Vehicles contain one or more defects in materials, components, construction or design, including but not limited to, the Transmission Defect, as described herein.

45.    Upon information and belief, faced with the fact that Class Vehicles were not properly shifting due to the Transmission Defect, Ford issued multiple Technical Service Bulletins ("TSBs") addressing the shifting problems.

46.     The TSBs stated 2017 and 2018 F-150 vehicles "may exhibit harsh/bumpy upshift, downshift and/or engagement concerns."[7] The TSBs suggested reprogramming the powertrain control module ("PCM"). The TSB's further stated that the Vehicles were "equipped with an adaptive transmission shift strategy which allows the vehicle's computer to learn the transmission's unique parameters and improve shift quality. When the adaptive strategy is reset, the computer will begin a re-learning process. This re-learning process may result in firmer than normal upshifts and downshifts for several days."[8]

47.     Upon information and belief, Ford's "adaptive transmission shift strategy" fails to remedy the shifting problems reported in Class Vehicles.

48.     Despite this knowledge, Ford took no further steps to remedy this issue, leaving Plaintiff and the other Class Members with knowingly defective Class Vehicles.

**B.      Customers Repeatedly Complained About Harsh and Erratic Shifting and Vehicle Lunging, Hesitation, and Jerking.**

49.     Hundreds, if not thousands, of purchasers and lessees of the Class Vehicles have experienced the Transmission Defect. Complaints filed by consumers with the NHTSA and posted on the Internet demonstrate that the Transmission Defect is widespread. Not only have consumers complained about harsh and bumpy shifting, but this often led to potentially life-threatening situations. In addition, these complaints illuminate Ford's awareness of the Transmission Defect and its potential danger (note that spelling and grammar mistakes remain as found in the original):

---

[7] Source: https://static.nhtsa.gov/odi/tsbs/2018/MC-10149749-9999.pdf (last viewed January 2, 2020).
[8] Source: https://static.nhtsa.gov/odi/tsbs/2018/MC-10149749-9999.pdf (last viewed January 2, 2020).

**2017 Ford F-150**

NHTSA Complaint dated May 20, 2019:  original problem was transmission slamming into gear and slipping when accelerating. the truck was kept at agency for 21/2 weeks. service manager told me that ford instructed him to quit working on it. problem of slipping still exist and recently the vehicle jumped out of gear when i was merging onto the interstate, i do not feel safe driving this vehicle. (ID No. 11208720)

NHTSA Complaint dated March 14, 2019:  vehicle lost all power while accelerating thru an intersection. the orange wrench illuminated on the dash with "check manual". i noticed the transmission not shifting down and up smoothly. it tried to start the truck off in 5th gear from a stop. after being shut down for an hour, the issue went away. dealer scanned it this morning and said no code was stored. (ID No. 11079161)

NHTSA Complaint dated April 12, 2019: transmission will stick and not change gears. like a dead spot and truck would not go faster. this has happened several times. (ID No. 11195806)

NHTSA Complaint dated April 8, 2019:  traveling down my driveway, coming to a stop and the transmission gets stuck in 3rd gear. it won't down shift into 1st gear so it won't move forward. i put the shifter into reverse and i am able to back up. put shifter into drive and still stuck in 3rd gear. back up to my house and park the truck not able to go anywhere. go into the house wait a couple of hours and then try it again and everything is okay. this has happened to me 3 other times. (ID No. 11195452)

NHTSA Complaint dated November 18, 2017:  4500 miles on vehicle, never towed anything, only normal city/highway driving, no long trips ever taken. was turning left at intersection and transmission seemed to slip, truck still made it through, i then noticed that a yellow "wrench" light came on, i assumed this was for my upcoming 5k mile oil change. i didn't think much of the "slip" and assumed it was an anomaly. i then got onto the highway and noticed the truck was behaving strangely, power was inconsistent, i attempted to put it into cruise control and it refused to activate. i got off of highway and turned left at an intersection, starting from a complete stop the truck lurched forward and then slipped out of gear and stalled out in the intersection. if a car was coming i would have easily been struck. i let it sit for a few seconds and then the transmission finally got into, and stayed in, first gear. at first it went into gear and then slipped out of gear. this "wrench" light was apparently a limp home mode, another complaint, besides the stalling, would be the fact that this little yellow wrench light does nothing to warn me that the truck is actually in an impaired state, a "limp" mode. i work in the aerospace industry and this would never be tolerated, a function that hampers the normal performance of your vehicle should be easy to recognize as a warning, a little yellow wrench looks like a service light. (ID No. 11047221)

**2018 Ford F-150**

NHTSA Complaint dated May 13, 2019:  intermittent transmission hesitation under acceleration, while pulling into traffic from a side street. without warning the truck completely cuts out. the engine is still running but there is no forward acceleration from the truck. this lasts about 10 seconds. two incidents so far. also very heavy, abrupt shifting, jerking shifting. also intermittent

when shifting the truck into reverse while stationary there is a loud heavy clunk from the transmission. (ID No. 11207153)

NHTSA Complaint dated April 17, 2019:  with 2018 f-150 10 speed transmission is shifting hard an down shifts hard getting whiplash. downstairs too hard been at the dealership today is the second time they constantly act like there's nothing wrong with the vehicle av to reset it once before still having major problems with that new transmission. so basically in inner-city driving is somebody was to jump in front of the vehicle with downshift quickly giving driver or any passengers whiplash stop the vehicle not a very safe or practical build can cause accidents and give major problems if anybody has bad backs or necks was not disclosed at time of sale of a hard shifting transmissions. (ID No. 11196876)

NHTSA Complaint dated April 11, 2019: my truck has 15,000 miles on it. the acceleration will run away frequently (press the pedal and there is a severe lag and lack of power). there will be random engine noise when decelerating around 45 miles per hour. also, acceleration will be rough when going from 20-30 miles per hour just before the it shifts into a higher gear. i took this to the ford dealer and they said there are no error codes on the trucks computer system. also, the steering will be stiff or unaligned at random times. please assist in getting these issues corrected. (ID No. 11195550)

NHTSA Complaint dated March 26, 2019:  tl* the contact owns a 2018 ford f-150. while driving various speeds, the vehicle hesitated to accelerate while depressing the accelerator pedal. also, a clunking noise was present when the transmission switched gears and the vehicle felt different. the vehicle was not diagnosed or repaired. nye ford (1555 upper lennix ave, onye, ny) and the manufacturer were notified of the failure. the vin was not available. the failure mileage was 14,000. (ID No. 11191541)

NHTSA Complaint dated March 4, 2019:  since purchasing the truck, the 10 speed automatic transmission doesn't seem to shift smoothly in many gears. it seems to lurch when shifting at often times and will skip gears when sifting quite frequently. for a new vehicle it doesn't shift smoothly at all. it's been serviced at an authorized ford dealer where they told me the transmission was reprogrammed due to a technical service bulletin but even since then it still doesn't shift smoothly. it happens pretty much everyday or every time i drive it since it was purchased. (ID No. 11184182)

NHTSA Complaint dated February 20, 2019:  this vehicle generally exhibits harsh upshifts (3rd-to-4th) and downshifts (4th-to-3rd) as indicated on the driver's ip. (ID No. 11181413)

i have experienced multiple occasions when the vehicle will "miss" the shift from 3rd to 4th, normally when cold and under light to moderate throttle conditions. the gear indicator briefly shows 1st gear, however, i was able to apply full throttle (100% accel pedal), but had no power to the wheels (drive is not engaged), engine speed rose to approximately 3000 rpm. this condition lasted for about 2-3 secs before it shifted to 4th, the revs settled to normal/expected range and drive to the wheels was re-engaged. this is an extremely dangerous condition that leaves me without power to safely accelerate, or merge with traffic. (ID No. 11181413)

NHTSA Complaint dated February 20, 2019: tl* the contact owns a 2018 ford f-150. while driving various speeds, the transmission downshifted on its own. the vehicle was taken to joel confer ford (2935 penns valley pike, centre hall, bellfornte, pa) on several occasions for the same failure and the transmission control module was reprogrammed; however, the failures continued. the manufacturer was notified of the failures, but no assistance was offered. the vin was not available. the failure mileage was 10,000. *tt*jb (ID No. 11181310)

NHTSA Complaint dated February 13, 2019:  transmission downshifts hard, delays of power to rear wheels, clunking noise, shuddering. been to dealership,3 times for transmission. dealership said i need to drive the truck until transmission gets worse before they can fix it. dealership said im wasting their time with warranty work. ford will not take action to help. transmission problems make the truck unsafe to drive along with its severe steering problems. please someone please help me before myself or my kids or someone else gets injured due to this unsafe truck and negligent dealership and ford (ID No. 11179963)

NHTSA Complaint dated February 9, 2019: 10-speed transmission hesitates/randomly shifts constantly during driving. when stopping at traffic lights, after being completely stopped, the vehicle lurches and an audible clunk can be heard from the transmission. it has always been sluggish when accelerating, today that has gotten far worse and the transmission light is on. i had a 45 minute drive home and the truck struggled to get up to 40 mph. this erratic transmission behavior makes it dangerous to drive in any kind of traffic or on the highway because you can't predict how the vehicle will behave when pushing the gas pedal. (ID No. 11175904)

NHTSA Complaint dated January 18, 2019: the transmission can not decide which gear to be in creating pauses of power distribution to the rear wheels. the transmission shifts hard and pulls the vehicle back and forth creating loud clunking noises and rattling the passengers. the poor operation of the transmission creates unsafe driving conditions. (ID No. 11170881)

NHTSA Complaint dated February 13, 2019: transmission downshifts hard, delays of power to rear wheels, clunking noise, shuddering. been to dealership,3 times for transmission. dealership said i need to drive the truck until transmission gets worse before they can fix it. dealership said im wasting their time with warranty work. ford will not take action to help. transmission problems make the truck unsafe to drive along with its severe steering problems. please someone please help me before myself or my kids or someone else gets injured due to this unsafe truck and negligent dealership and ford (ID No. 11179963)

NHTSA Complaint dated January 18, 2019: vehicle will sometimes hesitate during acceleration and transmission will slip - engine rpms will rise to about 2000 and then transmission will engage with a heavy clunk in the drive train. this issues has happened when engine is cold and at normal operating temp. the vehicle currently has 9000 miles on the odometer and has happened five(5) times already. took to local dealer and they are unable to doplicate (ID No. 11166063)

NHTSA Complaint dated December 13, 2018:  my truck occasionally does not accelerate from a stop at the correct speed. the rpms go way up but the truck barely moves. i described it to the dealer as being in 1/2 of 1st gear, but even then it does not feel totally connected between engine and transmission. it was much worse during hot weather. (ID No. 11161192)

NHTSA Complaint dated November 8, 2018:  while driving 60mph up a slight incline on the interstate, the truck stopped decelerating. the engine rpms jumped up. fortunately i was in the right hand lane and pulled to the shoulder and out of traffic. i was able to rev the rpms and no acceleration, while the gear indicator continued to read "d." it appeared the transmission slipped out of all gears. i coasted to a stop and apologized to my friend for the language as i was on a handsfree call. i placed the gear selector in park, noticed that there were no warning indicators on the dash, and shut off the truck. i pulled out the manual and tried to think of what to do next. finding no solutions, a friend suggested before i call a tow truck, to start it up and try to put it in drive. i did, and it went into gear normally. it has not happened again, however it has had a few unusually aggressive gear changes. i do not trust this truck with the coyote v-8 engine and 10-speed transmission combination. (ID No. 11161177)

NHTSA Complaint dated December 7, 2018: tl* the contact owns a 2018 ford f-150. the contact stated that the transmission shifted unevenly in the first three gears. when the vehicle was started initially, the rpms increased and decreased. the contact called koons sterling ford (46869 harry byrd hwy, sterling, va 20164, (703) 430-7700) and was informed that there was no recall for the failure. a diagnostic appointment was scheduled for a recall that was unrelated to the failure. the manufacturer was not contacted. the failure mileage was 13,000. (ID No. 11156801)

NHTSA Complaint dated December 7, 2018:  10 speed automatic transmission. transmission makes noise, shifts hard when cold, bucks and surges at lower speeds, downshifts are harsh. dealer states this is all normal behavior for this transmission. worst automatic i have ever owned. (ID No. 11156896)

NHTSA Complaint dated November 17, 2018:  10 speed transmission has been an ongoing issue, was hopeful it would resolve itself once the 5k mile break-in period was surpassed. transmission is awkward, clumsy and spends too much time hunting between gear shifts. my 2013 f150 with 105k miles on it drives noticeably smoother. ford dealer ok with no real explanation for customers. (ID No. 11152174)

NHTSA Complaint dated October 8, 2018:  transmission has intermittent slipping and very rough up and down shifting. it also has intermittent rough hot start (truck kicks forward as if it wants to take off during start up). the truck also has problems shifting while on "sport" mode in which it will not shift up to the next gear even as it reaches the red line in the tachometer. these problems have progressively increased since i bought the truck back in november 2017. i have brought up these concerns to two separate ford dealers and both stated i had to get used to the shifting in this new 10 speed transmission. both dealers also stated that they've had lots of costumer complaints regarding my concern but have not received any direction from ford. my concern is that the transmission might lock up, seize or have a catastrophic failure in which fluid would spill on the roadway and cause me to loose control of the truck. i have looked into several forums and found lots of people with similar complains regarding this 10 speed transmission. please help...thank you. (ID No. 11139060)

NHTSA Complaint dated September 6, 2018:  same issues I'm reading here. vehicle frequently makes a loud bang when started. shifts gears extremely rough to the point where you're jerked

around. no power when trying to accelerate from a stop which is extremely dangerous when cars are behind you or trying to accelerate merging onto the freeway. my truck has been to dealer twice now. the first time it was because my fuel injector went out at 4,500 miles! it doesn't run much better now. when i took it in they just blew me off and said it was "normal behavior for the vehicle. reading all these issues here, ford really needs to take action! extremely dangerous!! (ID No. 11124723)

NHTSA Complaint dated August 23, 2018: 10-speed transmission: the transmission shifts very badly. jerky shifting and often times the truck is sluggish when starting from a stop, often times to the point of acting like the engine is about to die. the only way to partially correct this issues is to drive aggressively and take off from a start with more throttle than one would normally want to. occasionally you can hear/feel a knock from under the truck - underneath the driver's seat when you start the truck and place the transmission in drive. other times when you start the truck and quickly place the transmission in drive the engine will cut off all while your right foot is still on the brake pedal. on one occasion while i was driving through an intersection on a highway at a slow speed (3 - 5 mph?) behind a car which made a right hand turn, i started accelerating and a very loud bang noise occurred that sounded like two cars hitting one another and a hard shake was felt. i checked my mirrors because i thought someone had rear-ended me. just this terrible 10-speed transmission. all of what i have described is after taking the truck to 2 different ford dealerships. all they have done so far is to re-install software. i plan to take it back to a dealership for the third time hoping that maybe someone might test drive it and actually drop the transmission oil pan and actually look at the transmission. maybe if i am lucky the transmission will self-destruct. (ID No. 11121927)

NHTSA Complaint dated August 4, 2018: truck downshifts very erratically and harsh from 6th to 5th gear while braking, causing the brake pedal to be pushed down at various pressures due to the truck lunging forward because of the erratic and harsh downshift from 6th to 5th gear. truck does not feel safe, the downshift is so erratic and harsh that it feels as if you are being rear ended. i have allowed time for the transmission to "learn" as stated in the manual but it has not changed. (ID No. 11119910)

NHTSA Complaint dated April 20, 2018:  10 speed transmission hazards: when braking the transmission lunges into to lower gears and surges forward erratically requiring varying brake pressure to stop. acceleration is also erratic, sometimes delayed, sometimes immediate. the ford dealership does not have a solution and ford will not responds to calls. the erratic behavior of the transmission makes the vehicle dangereous. (ID No. 11089179)

NHTSA Complaint dated April 9, 2018:  tl* the contact owns a 2018 ford f-150. while driving approximately 10 mph with the vehicle in first gear, the vehicle shifted into neutral. a few seconds later, the vehicle shifted into second gear. the contact stated that the failure recurred fifteen times. the vehicle was taken to the dealer (moberly motors ford in moberly, missouri, 660-263-6000) determined that the vehicle performed normally. the vehicle was not repaired. the manufacturer was notified of the failure. the approximate failure mileage was 521. (ID No. 11084065)

**17 –CLASS ACTION COMPLAINT**

**2019 Ford F-150**

NHTSA Complaint dated October 28, 2019: experiencing rough/jerky shifts from transmission. part of the jerky shift is a delay in downshift or up-shift followed by it clunking/slamming into gear. jerky downshifts in lower gears thrust vehicle forward. this is experienced during everyday driving conditions while the vehicle is moving in both city and highway conditions. the problem has been ongoing for months. manufacturer has been notified but will not provide a fix. (ID No. 11271538)

NHTSA Complaint dated July 1, 2019: i purchased a 2019 ford f-150 xlt with the 10-speed transmission and the 3.5l v6 ecoboost engine on 5/13/2019. the transmission has become very problematic and is rough to shift, skips gears, and has created unpleasant driving experiences for me and my passengers.

a few weeks after owning my truck, i started to notice issues with the transmission. initially the truck would appear to skip gears when shifting up or down, after i turned on the vehicle each day for the first time and started to drive. however, the transmission has started to perform worse over the past several weeks. the transmission will shift noticeably hard or sluggishly when shifting up or down with an occasional loud clang sound. the vehicle shifted so hard on two separate occasions that it has caused the seatbelt restraint for myself and my passenger to engage, at the time the vehicle was in motion going approximately 35 mph.

after the two incidents above and the increased frequency in which this transmission has difficulty performing, i took it back to the dealership on 7/1/2019. the appointment lasted about an hour (if that). the service advisor [] advised that the truck was hooked up to the diagnostic and provided me with a printout and told me the transmission was operating normally, and it will skip gears by design. i asked what can be done to fix it, since the truck is jerking me around while driving. he said there was not a fix and i should log a complaint with ford and if enough people complain, maybe a recall would be issued for this truck model/configuration. the vehicle is not operating as expecting and is starting to become a safety concern.

50.     Ford failed to disclose the Defect or to conduct sufficient testing or research that would have revealed the defect. As a result, Ford has caused Ford F-150 drivers to expend money at its dealerships or other third-party repair facilities and/or take other remedial measures related to the Transmission Defect in the Class Vehicles.

51.     As evidenced by the customer complaints, Ford was put on sufficient notice regarding harsh and abnormal shifting and loss of vehicle power.

52.     Ford has never disclosed the Transmission Defect to consumers. Instead, Ford attempted to squelch public recognition of the Transmission Defect by propagating the falsehood that the harsh and bumpy shifting in Class Vehicles was "normal."

53.     Ford has allowed Plaintiff and Class Members to continue to drive the Class Vehicles, despite knowing that they are prone to harsh or abrupt shifting, hesitation, and surging.

54.     Ford has not recalled the Class Vehicles to repair the Transmission Defect and has not offered to reimburse Class Vehicle owners and lessees who incurred costs relating to the transmission problems.

55.     Plaintiff and Class Members are reasonable consumers who reasonably expected their Class Vehicles will not harshly and abruptly shift and will not experience sudden and unexpected power surges and losses.

56.     Plaintiff and Class Members reasonably expected that Ford would not sell or lease Class Vehicles with known defects, such as the Transmission Defect, and that it would disclose any such defects to its customers before they purchased or leased Class Vehicles. Plaintiff and Class Members did not expect Ford to conceal the Transmission Defect, or to continually deny its existence.

57.     Consequently, Plaintiff and Class Members have not received the benefit for which they bargained when they leased their Class Vehicles.

58.     As a result of the Transmission Defect, the value of the Class Vehicles has diminished, including without limitation the lease-end value or resale value of the Class Vehicles.

## TOLLING OF THE STATUTE OF LIMITATIONS

### A.    Discovery Rule Tolling

59.    Plaintiff and Class Members could not have discovered through the exercise of reasonable diligence that their Class Vehicles were defective within the time-period of any applicable statutes of limitation.

60.    Among other things, neither Plaintiff nor the other Class Members knew or could have known that the Class Vehicles are equipped with transmissions with the Transmission Defect, which causes those transmissions to harshly shift causing gear slippage, vehicle surging, and hesitation.

61.    Further Plaintiff and Class Members had no knowledge of the Defect and it occurred in a part of the vehicle that was not visible to consumers.  Ford attempted to squelch public recognition of the Transmission Defect by propagating the falsehood that the harsh shifting that drivers of the Class Vehicles were experiencing was "normal."  Accordingly, any applicable statute of limitation is tolled.

### B.    Fraudulent Concealment Tolling

62.    Throughout the time-period relevant to this action, Ford concealed from and failed to disclose to Plaintiff and the other Class Members vital information about the Transmission Defect described herein.

63.    Ford kept Plaintiff and the other Class Members ignorant of vital information essential to the pursuit of their claims.  As a result, neither Plaintiff nor the other Class Members could have discovered the Defect, even upon reasonable exercise of diligence.

64.     Throughout the Class Period, Ford had been aware that the transmissions it designed, manufactured, and installed in the Class Vehicles contained the Transmission Defect, resulting in harsh shifting, gear slippage, and vehicle surging and hesitation.

65.     Despite its knowledge of the Transmission Defect, Ford failed to disclose and concealed, and continues to conceal, this critical information from Plaintiff and the other Class Members, even though, at any point in time, it could have disclosed the Transmission Defect through individual correspondence, media release, or by other means.

66.     Plaintiff and the other Class Members justifiably relied on Ford to disclose the Transmission Defect in the class Vehicles that they purchased or leased, because the Defect was hidden and not discoverable through reasonable efforts by Plaintiff and the other Class Members.

67.     Thus, the running of all applicable statutes of limitation have been suspended with respect to any claims that Plaintiff and the other Class Members have sustained as a result of the Defect, by virtue of the fraudulent concealment doctrine.

**C.      Estoppel**

68.     Ford was under a continuous duty to disclose to Plaintiff and the other Class Members the true character, quality, and nature of the defective Transmissions.

69.     For knowingly concealed the true nature, quality, and character of the defective Transmissions from consumers.

70.     Based on the foregoing, Ford is estopped from relying on any statutes of limitations in defense of this action.

## CLASS ACTION ALLEGATIONS

71.    Plaintiff brings this lawsuit individually and as a class action on behalf of all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and/or (b)(3).  This action satisfied the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

72.    The Class is defined as:

**All persons in Massachusetts who formerly or currently own or leased one or more of 2017 to 2020 Model Year Ford F-150 trucks with a 10R80 10-speed automatic transmission.**

73.    Excluded from the Class are Defendant ad its subsidiaries and affiliates, Defendant's executives, board members, legal counsel, the judges and all other court personnel to whom this case is assigned, their immediate families, and those who purchased Class Vehicles for the purpose of resale.

74.    Plaintiff reserves the right to amend or modify the Class definition after he has had an opportunity to conduct discovery.

75.    **Numerosity**:  Fed. R. Civ. P. 23(a)(1).  The Class is so numerous that the joinder of all members is unfeasible and not practicable.  While the precise number of Class Members has not been determined at this time, Plaintiff is informed and believes that thousands of consumers have purchased or leased the Class Vehicles in Massachusetts.

76.    **Commonality**:  Fed. R. Civ. P. 23(a)(2) and (b)(3).  There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members.  These common questions of law and fact include, without limitation:

    a.    whether the Class Vehicles and their transmissions are defectively designed or manufactured such that they are not suitable for their intended use;

b.  whether the fact that the Class Vehicles suffer from the Transmission Defect would be considered material to a reasonable consumer;

c.  whether, as a result of Ford's concealment or failure to disclose material facts, Plaintiff and Class Members acted to their detriment by purchasing Class Vehicles manufactured by Ford;

d.  whether Ford was aware of the Transmission Defect;

e.  whether the Transmission Defect constitutes an unreasonable safety risk;

f.  whether Ford breached express warranties with respect to the Class Vehicles;

g.  whether Ford has a duty to disclose the defective nature of the Class Vehicles and the Transmission Defect to Plaintiff and Class Members;

h.  whether Plaintiff and Class Members are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction; and

i.  whether Ford violated the Magnuson-Moss Warranty Act when it sold to consumers Class Vehicles that suffered from the Transmission Defect.

77.    **Adequate Representation:**  Plaintiff will fairly and adequately protect the interests of Class Members.  Plaintiff has retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiff intends to prosecute this action vigorously.

78.    **Predominance and Superiority:**  Plaintiff and Class Members have all suffered and will continue to suffer harm and damages as a result of Ford's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the

relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Ford's misconduct. Absent a class action, Class Members will continue to incur damages, and Ford's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants will promote consistency and efficiency of adjudication.

## FIRST CAUSE OF ACTION
### Breach of Express Warranty
### (Mass. Gen. Laws ch. 106 § 2-313)
### (Plaintiff individually, and on behalf of the Class)

79.    Plaintiff incorporates by reference and re-alleges the preceding paragraphs as if fully set forth herein.

80.    Plaintiff brings this cause of action individually and on behalf of the Class.

81.    Mass. Gen. Laws ch 106, § 2-313(1) states, in part, that:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the good and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the sample or model.

82.    In the course of selling and leasing the Class Vehicles, Ford expressly warranted in writing that the vehicles were covered by certain warranties in Ford's "New Vehicle Limited Warranty" as described herein. This express warranty states that "authorized Ford Motor Company dealers will, without charge, repair, replace, or adjust all parts on your vehicle that malfunction or fail during normal use during the applicable coverage period due to a

manufacturing defect in the factory-supplied materials or factory workmanship."[9]

83.    As evidenced by the TSB from September 7, 2018, the Transmission Defect is covered by New Vehicle Limited Warranty.

84.    The New Vehicle Limited Warranty as described was made part of the basis of the bargain when Plaintiff and Class Members bought the Vehicle.

85.    Ford breached its express warranties to repair defects in materials and workmanship of any part supplied by Ford. Ford has not repaired, and has been unwilling to reasonably repair, the Transmission Defect.

86.    Furthermore, the express warranties to repair defective parts fail in their essential purpose because the contractual remedy is insufficient to make Plaintiff and Class Members whole and because Ford has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

87.    Ford made additional warranties to Plaintiff and Class Members such as the 10R80 transmissions delivered "enhanced acceleration," "immediate responsiveness," and "on demand power."

88.    Accordingly, recovery by Plaintiff and the Class is not limited to the express warranties of repair to parts defective in materials or workmanship, and Plaintiff seeks all remedies as allowed by law.

89.    Ford was provided notice of these issues by numerous customer complaints regarding the Transmission Defect before or within a reasonable amount of time after the allegations of the defect became public.

---

[9]  Source:  http://www.fordservicecontent.com/Ford_Content/Catalog/owner_information/2018-Ford-Car-Lt-Truck-version-5_frdwa_EN-US_01_2018_3.pdf (last viewed January 2, 2020).

90.     As a direct and proximate result of Ford's breach of express warranties, Plaintiff and Class Members has been damaged in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability**
**(Mass. Gen. Laws ch. 106, 2-314)**
**(Plaintiff individually, and on behalf of the Class)**

91.     Plaintiff incorporates by reference and re-alleges the preceding paragraphs as if fully set forth herein.

92.     Plaintiff brings this cause of action individually and on behalf of the Class.

93.     Ford is and was at all relevant times a merchant with respect to the Class Vehicles.

94.     Ford was an is in actual or constructive privity with Plaintiff and all Class Members.

95.     Pursuant to Mass. Gen. Laws ch. 106, § 2-314, the Class Vehicles owned or leased by Plaintiff and Class Members were defectively designed and manufactured and posed a serious and immediate safety risk to consumers and the public.  The Class Vehicles were subject to an implied warranty of merchantability, did not comply with the warranty in that they were defective at the time of sale, and as a proximate result of the defect the Plaintiff and Class Members sustained damages.

96.     The Class Vehicles left Ford's facilities and control with a Defect caused by defective design incorporated into the manufacture of the Class Vehicles.  The Defect puts the consumers at a safety risk upon driving the Class Vehicles.  At all times relevant hereto, there was a duty imposed by law which requires that a manufacturer or seller's product be reasonably fit for the ordinary purposes for which such products are used, and that the product be acceptable in trade for the product description.  This implied warranty of merchantability is part of the basis of the bargain between Ford, on the one hand, and Plaintiff and Class Members, on the other.

97.     Notwithstanding the aforementioned duty, at the time of delivery, Ford breached the implied warranty of merchantability in that the Class Vehicles transmissions were defective and posed a serious safety risk at the time of sale, would not pass without objection, are not fit for the ordinary purposes for which such goods are used, and failed to conform to the standard performance of like products used in the trade.

98.     Ford knew, or should have known, that the Class Vehicles posed a safety risk and were defective and knew, or should have known, of these breaches of implied warranties prior to sale or lease of the Class Vehicles to Plaintiff and Class Members.

99.     As a direct and proximate result of Ford's breaches of its implied warranties, Plaintiff and Class Members bought the Class Vehicles without knowledge of the Defect or their serious safety risks and purchased unsafe products which could not be used for their intended use.

100.    As a direct and proximate result of Ford's breach of its implied warranties, Plaintiff and Class Members have suffered damages and Ford was unjustly enriched by keeping the profits for its unsafe products while never having to incur the cost of repair, replacement or a recall.

## THIRD CAUSE OF ACTION
### Breach of Implied Warranty of Fitness For a Particular Purpose
### (Mass. Gen. Laws ch. 106, 2-315)
### (Plaintiff individually, and on behalf of the Class)

101.    Plaintiff incorporates by reference and re-alleges the preceding paragraphs as if fully set forth herein.

102.    Pursuant to the Mass. Gen. Laws ch. 106, § 2-315, at the time Plaintiff and Class Members purchased or leased the Class Vehicles, they intended to use the goods for the particular purpose of safely driving the Class Vehicles on and off roadways for personal, family, or work purposes.  At the time of purchase of the Class Vehicles, Ford had reason to know of these particular purposes and this implied warranty of fitness for a particular purpose was part of the

basis of the bargain between Ford, on the one hand, and Plaintiff and Class Members, on the other hand.  Indeed, Ford sold or leased the Class Vehicles for such purposes.

103.    Plaintiff and Class Members relied on Ford's skill and judgment to design and manufacture Class Vehicles suitable for this particular purpose.  At the time of purchase, Ford had reason to know that Plaintiff and Class Members relied on its skill and judgment.  The Class Vehicles, however, when sold or leased to Plaintiff and Class Members, and at all times thereafter, were not fit for their particular purpose of safely being driven.  Specifically, the Class Vehicles owned by Plaintiff and Class Members were defectively designed and manufactured and left Ford's facilities and control with a Defect incorporated into the manufacture of the Class Vehicles and posed a serious risk to safety immediately upon purchase.

<u>FOURTH CAUSE OF ACTION</u>
**Violation of Magnuson-Moss Warranty Act**
**(15 U.S.C. § 2301, *et seq*.)**
**(Plaintiff individually, and on behalf of the Class)**

104.    Plaintiff incorporates by reference and re-alleges the preceding paragraphs as if fully set forth herein.

105.    Plaintiff brings this cause of action individually and on behalf of the Class.

106.    Plaintiff and Class Members are "consumers" within the meaning of 15 U.S.C. § 2301(3).

107.    Defendant is a "supplier" and "warrantor" within the meaning of 15 U.S.C. § 2301(4)–(5).

108.    The Class Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

109.    Ford's express warranties are each a "written warranty" within the meaning of 15 U.S.C. § 2301(6).

110.    Section 2310(d) of the MMWA provides a cause of action for consumers who are harmed by the failure of a warrantor to comply with a written or implied warranty.

111.    Ford's express warranties are written warranties within the meaning of Section 2301(6) of the MMWA. The Class Vehicles' implied warranties are accounted for under Section 2301(7) of the MMWA, warranties which Ford could not disclaim under the MMWA, when it failed to provide merchantable goods.

112.    As discussed herein, Ford extended a three-year/36,000 mile New Vehicle Limited Warranty with the purchase or lease of the Class Vehicles, thereby warranting to repair or replace any part defective in material or workmanship at no cost to the owner or lessee. Ford further extended a five-year/60,000 mile Powertrain Warranty with the purchase or lease of the Class Vehicles.

113.    Ford breached each of these express warranties by:

    a.    Selling and leasing Class Vehicles with transmissions that were defective in material and workmanship, requiring repair or replacement within the warranty period; and

    b.    Refusing and/or failing to honor the express warranties by repairing or replacing, free of charge, any defective component parts.

114.    Ford's breach of express warranty has deprived Plaintiff and Class Members of the benefit of their bargain.

115.    Plaintiff and Class Members have sufficient interactions with Ford to create privity of contract; however, privity of contract is not required because Plaintiff and Class Members are intended third-party beneficiaries of contracts between Ford and its authorized dealers, and specifically, of Ford's implied warranties. Ford's dealers are intermediaries between Ford and

consumers, that sell Class Vehicles to consumers and are not consumers of Class Vehicles, and therefore have no rights against Ford with respect to Plaintiff's and Class Members' purchases or leases of Class Vehicles. Ford's warranties were designed for the benefit of consumers who purchased or leased Class Vehicles.

116.    The amount in controversy for each individual Plaintiff's claim exceeds the sum or value of $25and matter in controversy exceeds the sum or value of $5,000,000.00 exclusive of interest and cost; there are over 100 Class Members.

117.    Ford has been afforded a reasonable opportunity to cure its breach of written warranty, including when owners and lessees brought their vehicles in for diagnosis and repair of the Transmission Defect.

118.    Resorting to any informal dispute resolution procedure is unnecessary and/or futile. At the time of sale or lease to Plaintiff, Ford knew, should have known, or was reckless in not knowing of its misrepresentations or omissions concerning the Transmission Defect, but nevertheless failed to rectify the situation and/or disclose it to Plaintiff. Moreover, the remedies available through any informal dispute resolution procedure would be wholly inadequate under the circumstances. Accordingly, any requirement under the MMWA or otherwise that Plaintiff resort to any informal dispute resolution procedure is excused and, thereby, deemed satisfied.

119.    As a direct and proximate cause of Ford's breach of express and implied warranties, Plaintiff and Class Members sustained damages and other losses in an amount to be determined at trial. Ford's conduct damaged Plaintiff and Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution of value, costs, including statutory attorneys' fees and/or other relief as appropriate.

**FIFTH CAUSE OF ACTION**
**Violation of the Massachusetts Consumer Protection Law**
**(Mass. Gen. Laws ch. 93A *et seq.*)**
**(Plaintiff individually, and on behalf of the Class)**

120.    Plaintiff incorporates by reference and re-alleges the preceding paragraphs as if fully set forth herein.

121.    Plaintiff brings this cause of action individually and on behalf of the Class.

122.    Plaintiff asserts a claim under the Massachusetts Consumer Protection Law ("MCPL") ("Chapter 93A"), which makes it unlawful to engage in any "[u]nfair methods of competition or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 92A, § 2(a).

123.    Ford developed, manufactured, marketed and sold the defective Class Vehicles containing the Defective Transmissions as alleged herein. Ford developed, manufactured, marketed and sold the Class Vehicles despite knowledge of the Defect and that the Class Vehicles posed a serious safety risk to consumers like Plaintiff and Class Members.

124.    Ford's actions and omissions in selling and leasing its Class Vehicles as safe for the road despite knowing that the Class Vehicles posed a serious safety risk to consumers, failing to disclose the Defect and safety risks known to Ford but hidden from the consumer, and Ford's knowing concealment of the defective Class Vehicles' unreasonable safety risks, are misrepresentations, omissions and concealments of material fact that constitute unfair and/or deceptive trade practices in violation of the MCPL. Ford's unfair and deceptive practices alleged herein constitute unfair and deceptive acts or practices in or affecting commerce pursuant to 940 C.M.R. § 6.04(1)-(2). Ford's practices are illegal, unfair or deceptive acts or practices in the conduct of trade or commerce and are inherently deceptive. Ford's practices alleged herein offend public policy and are immoral, unethical, oppressive, and unscrupulous.

**31 –CLASS ACTION COMPLAINT**

125.    Ford violated the MCPL not only when it sold the Class Vehicles as safe for use by consumers, but also when it failed to disclose to Plaintiff and Class Members that the Class Vehicles had a Defect that posed a serious safety risk to consumers and the public, despite Ford's knowledge that the Class Vehicles posed such a risk to Plaintiff and Class Members.

126.    Ford engaged in deceptive trade practices, in violation of the MCPL, including selling a product for personal or household use that was unsafe to use, holding out to the public that its product could be driven safely on the road, and failing to warn consumers that the Class Vehicles contained a Defect that posed a serious safety risk to consumers and the public.

127.    Ford's deceptive trade practices were designed to induce Plaintiff and Class Members to purchase the Class Vehicles containing the Defect and to avoid the cost of replacing, repairing or recalling the Class Vehicles already in use across the United States.  Ford's violations of the MCPL were designed to conceal, and Ford failed to disclose, material facts about the Defect and unreasonable safety risks in the Class Vehicles in order to induce Plaintiff and Class Members to purchase the Class Vehicles and in order to avoid the business cost of replacing, repairing and/or recalling the Class Vehicles.

128.    By engaging in the unfair and deceptive conduct described herein, Ford actively concealed and failed to disclose material facts about the defective Class Vehicles.

129.    The omissions set forth above regarding the Class Vehicles are omissions of material facts that a reasonable person would have considered important in deciding whether or not to purchase a Class Vehicle.  Indeed, no reasonable consumer would have knowingly bought or leased a Class Vehicle for use on the road, or otherwise, if that consumer had known that the product had a serious Defect that posed a safety risk and that the Defect caused the Class Vehicles to lose power in the normal course of use.

130. Ford's acts were intended to be deceptive and/or fraudulent, namely to market, distribute and sell the Class Vehicles and to avoid the expense of replacing, repairing and/or recalling Class Vehicles across the United States.

131. Plaintiff and Class Members suffered injury in-fact as a direct result of Ford's violations of the MCPL in that they have paid a premium for Class Vehicles that are equipped with Ford's defective 10R80 10-speed automatic transmission and that pose an immediate safety risk to consumers and the public. Plaintiff and Class Members did not received the benefit of the bargain they made when purchasing or leasing their Class Vehicles.

132. Plaintiff and Class Members have also been denied the use of their Class Vehicles, expended money on replacement and repairs, and suffered unreasonable diminution in value of their Class Vehicles as a result of Ford's conduct alleged herein.

133. Had Ford disclosed the true quality, nature and defects of the Class Vehicles, Plaintiff and Class Members would not have purchased the Class Vehicles or would have paid less.

134. To this day, Ford continues to violate the MCPL by concealing the defective nature of the Class Vehicles in failing to notify customers, in failing to issue a recall, and in collecting the profits from costly repairs and replacements.

135. Prior to filing this Complaint, on November 27, 2019, Plaintiff served a demand letter on Ford, notifying Ford of Plaintiff's damages and the Transmission Defect in his Class Vehicle and demanding relief, in compliance with Mass. Gen. Laws ch. 93A, § 9(3). Ford responded but did not offer classwide relief as requested.

136.    Plaintiff and Class Members have been damaged by these violations of the MCPL. The damages should be trebled, and Plaintiff and Class Members should be allowed to recover attorneys' fees pursuant to Mass. Gen. Laws ch. 93A § 9.

## SIXTH CAUSE OF ACTION
### Negligence
### (Plaintiff individually, and on behalf of the Class)

137.    Plaintiff incorporates by reference and re-alleges the preceding paragraphs as if fully set forth herein.

138.    Plaintiff brings this cause of action individually and on behalf of the Class.

139.    Ford had a duty to design and manufacture a product that would be safe for its intended and foreseeable uses and users, including the use to which its products were put by Plaintiff and the Class Members.  Ford breached its duties to Plaintiff and the Class Members because they were negligent in the design, development, manufacture, and testing of the Transmissions installed in the Class Vehicles, and Ford is responsible for this negligence.

140.    Ford was negligent in the design, development, manufacture, and testing of the Transmissions installed in the Class Vehicles because they knew, or in the exercise of reasonable care should have known, that the vehicles equipped with defective transmissions pose an unreasonable risk of serious bodily injury to Plaintiff and Class Members, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to shifting harshly and erratically, causing the vehicle to jerk, lunge, and hesitate between gears, which can, among other things, distract drivers and cause them to lose control over their vehicles.

141.    Ford owed Plaintiff and the Class a duty to provide thorough notice of known safety defects, such as the Transmissions' shifting difficulties.

142.   Once it discovered the Transmission Defect, Ford also owed Plaintiff and the Class Members a duty to ensure that an appropriate repair procedure was developed and made available to consumers.

143.   Ford also owed Plaintiff and the proposed Class a duty not to engage in fraudulent or deceptive conduct, including the knowing concealment of material information such as the transmission's shifting problems.  This duty is independent of any contractual duties Ford may owe or have owed.

144.   Under the TREAD Act, Ford owed an independent duty to send notice to Plaintiff and Class Vehicle owners, purchasers, and dealers whenever it "learns the vehicle or equipment contains a defect and decides in good faith that the Defect is related to motor vehicle safety."  49 U.S.C. § 30118(c).  Despite Ford's awareness of the Transmission Defect, it failed to timely notify owners, purchasers, and dealers.  This duty is independent of any contractual duties Ford may owe or have owed to them.

145.   A finding that Ford owed a duty to Plaintiff and the Class would not significantly burden Ford. Ford has the means to efficiently notify drivers of Class Vehicles about dangerous defects.  The cost borne by Ford for these efforts is insignificant in light of the dangers posed to Plaintiff and the Class by Ford's failure to disclose the Transmission Defect and provide an appropriate notice and repair.

146.  Ford's failure to disclose the Defect in Class Vehicles to consumers and the NHTSA is a departure from the reasonable standard of care.  Accordingly, Ford breached its duties to Plaintiff and the Class.

147.    Ford's conduct was contrary to public policy favoring the disclosure of defects that may affect customer safety; these policies are embodied in the TREAD Act, and the notification requirements in 49 C.F.R. § 573.1, *et seq*.

148.    As a direct, reasonably foreseeable, and proximate result of Ford's failure to exercise reasonable care to inform Plaintiff and the Class about the Defect or to provide appropriate repair procedures for it, Plaintiff and the Class Members have suffered damages in that they spent more money than they otherwise would have on Class Vehicles which are of diminished value.

149.    Plaintiff and the Class Members could not have prevented the damages caused by Ford's negligence through the exercise of reasonable diligence.  Neither Plaintiff nor the Class Members contributed in any way to Ford's failure to provide appropriate notice and repair procedures.

150.    Plaintiff and the Class seek to recover the damages caused by Ford.  Because Ford acted fraudulently and with wanton and reckless misconduct, Plaintiff also seeks an award of punitive damages.

<u>SEVENTH CAUSE OF ACTION</u>
**Unjust Enrichment**
**(Plaintiff individually, and on behalf of the Class)**

151.    Plaintiff incorporates by reference and re-alleges the preceding paragraphs as if fully set forth herein.

152.    Plaintiff brings this cause of action individually and on behalf of the Class.

153.    Ford has long known that its 10R80, 10-speed automatic transmissions have a propensity to shift harshly and erratically, causing the vehicle to jerk, lunge, and hesitate between gears, posing a serious safety risk, which it concealed and failed to disclose to Plaintiff and the proposed Class Members.

154.    As a result of its fraudulent acts and omissions related to the defective Transmissions, Ford obtained monies which rightfully belong to Plaintiff and Class Members to the detriment of Plaintiff and the proposed Class Members.

155.    Ford appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiff and the proposed Class Members who, without knowledge of the Defect, paid a higher price for their vehicles which actually had lower values.  Ford also received monies for vehicles and transmissions that Plaintiff and the proposed Class Members would not have otherwise purchased or leased.

156.    It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

157.    Ford's retention of these wrongfully-obtained profits would violate the fundamental principles of justice, equity, and good conscience.

158.    Plaintiff and the Class are entitled to restitution of the profits unjustly obtained plus interest.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other Class Members proposed in this Complaint, respectfully request that the Court enter judgment in their favor and against Defendant as follows:

A.    Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as Class Representative and appointing the undersigned counsel as Class Counsel;

**37 –CLASS ACTION COMPLAINT**

B.  Ordering Defendant to pay actual damages (and no less than the statutory minimum damages) and equitable monetary relief to Plaintiff and the other members of the Class;

C.  Ordering Defendant to pay punitive damages, as allowable by law, to Plaintiff and the other members of the Class;

D.  Ordering Defendant to pay statutory damages, as allowable by the statutes asserted herein, to Plaintiff and the other members of the Class;

E.  Awarding injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective recall campaign;

F.  Ordering Defendant to pay a service award to the Plaintiff, and pay reasonable attorneys' fees and litigation costs for representing the Plaintiff and the other members of the Class;

G.  Ordering Defendant to pay both pre- and post-judgement interest on any amounts awarded; and

H.  Ordering such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself and all others similarly situated, hereby demands a trial by jury as to all matters so triable.

*Signature on following page*

**38 –CLASS ACTION COMPLAINT**

Dated:  January 10, 2020.

**GREG COLEMAN LAW PC**

/s/ *Alex R. Straus*
Alex R. Straus (MA Bar # 677434)
16748 McCormick Street
Los Angeles, CA 91436
Telephone:   (310) 450-9689
Facsimile:    (310) 496-3176
alex@gregcolemanlaw.com

Gregory F. Coleman*
Lisa A. White*
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone:   (865) 247-0080
Facsimile:    (865) 522-0049
greg@gregcolemanlaw.com
lisa@gregcolemanlaw.com

John R. Fabry*
Luis Munoz*
**THE CARLSON LAW FIRM, P.C.**
1717 N. Interstate Highway 35
Suite 305
Round Rock, Texas 78664
Telephone:   (512) 671-7277
Facsimile:    (512) 238-0275
jfabry@carlsonattorneys.com
lmunoz@carlsonattorneys.com

Sidney F. Robert*
**BRENT COON AND ASSOCIATES**
300 Fannin, Suite 200
Houston, Texas 77002
Telephone:   (713) 225-1682
Facsimile:    (713) 225-1785
sidney.robert@bcoonlaw.com

*Attorneys for Plaintiff*

*Application *pro hac vice* to be submitted

**39 –CLASS ACTION COMPLAINT**